## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIANMIN HUANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INNOCOLL HOLDINGS PUBLIC LIMITED COMPANY, ANTHONY P. ZOOK, JOSE CARMONA, and LESLEY RUSSEL<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Jianmin Huang ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Innocoll Holdings plc ("Innocoll" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Innocoll common shares between

March 17, 2016 and December 29, 2016, both dates inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 promulgated thereunder.

2.      Innocoll is a global, specialty pharmaceutical company with late stage development programs that is dedicated to engineering better medicines to help patients get better. The Company's proprietary, biocompatible, and biodegradable collagen products are precision-engineered for targeted use. Applied locally to surgery sites, they are designed to provide a range of benefits. The Company's late stage product pipeline is focused on addressing a number of large unmet medical needs.

3.      Innocoll is headquartered in Athlone, Ireland.  The Company's common stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "INNL."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's lead product XARACOLL for postsurgical pain treatment entailed undisclosed health and safety risks; (ii) consequently, the Company had overstated the drug's approval prospects and/or commercial viability; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

5.      On December 29, 2016, Innocoll announced that it had received a Refusal to File letter from the U.S. Food & Drug Administration ("FDA") with respect to the Company's New Drug Application for its lead product candidate XARACOLL, a postsurgical pain treatment. Innocoll stated that the FDA's letter informed the Company that XARACOLL should have been

characterized as a drug/device combination, requiring Innocoll to submit further information.

6.      On this news, Innocoll's share price fell $1.08, or 61.02%, to close at $0.69 on December 30, 2016.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Innocoll's U.S. headquarters are located within this Judicial District.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.      Plaintiff, as set forth in the attached Certification, purchased common shares of Innocoll at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

3

13.     Defendant Innocoll is incorporated in Ireland, and the Company's principal executive offices are located at Unit 9, Block D, Monksland Business Park, Monksland Athlone, Ireland. Innocoll's United States headquarters are located at 3803 West Chester Pike, Newtown Square, PA 19073. Innocoll's common stock trades on the NASDAQ under the ticker symbol "INNL."

14.     Defendant Anthony P. Zook ("Zook") has served at all relevant times as the Company's Chief Executive Officer, President and Director.

15.     Defendant Jose Carmona ("Carmona") has served at all relevant times as the Company's Chief Financial Officer.

16.     Defendant Lesley Russel ("Russel") has served at all relevant times as the Company's Chief Medical Officer.

17.     The Defendants referenced above in ¶¶ 14-16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Innocoll is a global, specialty pharmaceutical company with late stage development programs that is dedicated to engineering better medicines to help patients get better. The Company's proprietary, biocompatible, and biodegradable collagen products are precision-engineered for targeted use. Applied locally to surgery sites, they are designed to provide a range of benefits. The Company's late stage product pipeline is focused on addressing a number of large unmet medical needs.

## Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on March 17, 2016, when Innocoll filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 20-F").  For the quarter, Innocoll reported a net loss of $6.82 million, or $0.29 per diluted share, on revenue of $890,000, compared to a net loss of $5.29 million, or $3.62 per diluted share, on revenue of $940,000 for the same period in the prior year.  For fiscal year 2015, Innocoll reported a net loss of $47.90 million, or $2.15 per diluted share, on revenue of $2.87 million, compared to a net loss of $27.46 million, or $37.33 per diluted share, on revenue of $5.97 million for fiscal year 2014.

20.     In the 2015 20-F, Innocoll stated in relevant part:

> XaraColl is an implantable, bioresorbable collagen sponge designed to provide sustained post-operative pain relief through the controlled local delivery of bupivacaine at the surgical site, thereby reducing the need for systemic opioids in the treatment of post-operative pain. Bupivacaine is a local anesthetic that blocks propagation of nerve signals via sodium channel antagonism.
>
> …
>
> We initiated a Phase 3 pivotal pharmacokinetic study during the third quarter of 2014 and expect to commence Phase 3 efficacy trials for XaraColl in the third quarter of 2015, with pivotal data expected in early 2016. We are planning to enter into distribution and marketing arrangements with one or more partners to distribute XaraColl in Europe and worldwide.

21.     The 2015 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Zook and Carmona, stating that the financial information contained in the 2015 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.     On November 3, 2016, Innocoll issued a news release entitled "Innocoll announces top-line data from Phase 3 Trials with COGENZIA and NDA submission for XARACOLL,"

announcing the Company's NDA submission to the FDA for XARACOLL.  The news release

stated, in pertinent part:

> Innocoll also announced the submission of a New Drug Application (NDA) for XARACOLL (bupivacaine HCl collagen-matrix implants) to the U.S. Food and Drug Administration (FDA) for the treatment of postsurgical pain. The submission was based upon the successful results of the MATRIX trials which showed statistically significant differences in the primary endpoint, the sum of pain intensity in both studies, as well as statistically significant reductions in opioid use and other secondary endpoints.

23.     On November 16, 2016, the Company presented at the Stifel 2016 Healthcare

Conference. During the presentation, Innocoll included several slides regarding the submission of

its NDA for the XARACOLL to the FDA with an expected PDUFA action date by the third quarter

of 2017.

24.     On November 22, 2016, Innocoll issued a news release, also attached as Exhibit

99.1 to a Current Report on Form 6-K filed with the SEC, announcing the Company's financial

and operating results for the quarter ended September 30, 2016 (the "Q3 2016 6-K"). For the

quarter, Innocoll reported a net loss of $17.20 million, or $0.58 per diluted share, on revenue of

$920,000, compared to a net loss of $7.53 million, or $0.32 per diluted share, on revenue of

$660,000 for the same period in the prior year.

25.     In Exhibit 99.1, entitled "Innocoll Holdings plc announces third quarter 2016

financial and operating results and provides corporate updates," the Company stated in relevant

part:

> ATHLONE, Ireland, November 22, 2016 — Innocoll Holdings plc (Nasdaq: INNL), a global, specialty pharmaceutical company with late stage development programs targeting areas of significant unmet medical needs, today announced financial and operating results for the three months ended September 30, 2016. Using our proprietary collagen-based technology platform, we manufacture and supply a range of biodegradable and fully bioresorbable pharmaceutical products and medical devices that are precision-engineered for targeted use.

6

*"As we recently announced, Innocoll achieved an exciting, new milestone with the submission of a New Drug Application (NDA) to the U.S. Food and Drug Administration (FDA), for XARACOLL for the treatment of post-surgical pain,"* said Tony Zook, Chief Executive Officer of Innocoll. *"We anticipate an FDA acceptance of the NDA, for review, by the end of this year, and with a target Prescription Drug User Fee Act (PDUFA) action date in late August 2017, this achievement will take us another step closer to the approval and launch of XARACOLL in potentially less than one year.* In preparation, our Saal Germany based manufacturing facility has completed its construction phase, and we are on schedule to undergo pre-approval inspections soon. In addition to progressing XARACOLL, we were also pleased to announce the advancement of COLLAGUARD upon successful demonstration of medical safety in its pre-clinical studies, which cleared the way for our submission of an Investigational Device Exemption (IDE) this month for the prevention of post-surgical adhesions. The COLLAGUARD program is an ideal complement to XARACOLL, which we believe will position Innocoll competitively in the hospital segment. We reported earlier this month that while COGENZIA showed trends of clinical improvement as adjunct treatment of Diabetic Foot Infections (DFIs), the top-line results did not reach statistical significance for the primary endpoint. We will continue to assess all strategic options to bring these much needed new products to the market and the medical community. *We plan to manage our cash runway until after the anticipated XARACOLL NDA approval, expected in the third quarter of 2017, and we feel confident about our ability to finance the commercialization of XARCOLL as well as our pipeline".*

Third Quarter 2016 and Recent Highlights

- o Submitted an NDA for XARACOLL to the FDA for the treatment of postsurgical pain

  - *FDA acceptance anticipated by the end of 2016, with a target PDUFA action date in late August 2017.*

  - Presented supportive pharmacokinetic data at American Society of Anesthesiologists (ASA) Annual Meeting in Chicago, in October.

  - Medical publication and presentation of full Phase 3 data are targeted for 2Q 2017. Also under preparation to be published next year are the results of our Health Economics (HECON) study, demonstrating the health economic benefits of using XARACOLL.

  - Assessment of strategic options around product development continues, as well the planning and preparation for commercialization has ramped up.

(Emphases added).

26.     During a conference call on that same day to discuss the Company's financial and

operating results for the third fiscal quarter ended September 30, 2016, Defendant Zook spoke

about the NDA for XARACOLL, stating in relevant part:

> First, we were very pleased to announce recently the achievement of an exciting
> new milestone for Innocoll. *We submitted our first new drug application to the*
> *U.S. Food and Drug Administration in October for XARACOLL for the*
> *treatment of post-surgical pain. We expect to hear back from the FDA by the end*
> *of this year with respect to their acceptance of the NDA filing. This would target*
> *a PDUFA action date in late August putting us on track to the approval and*
> *commercialization of a branded therapeutic in potentially less than a year.*
>
> …
>
> As you can see, XARACOLL posted positive Phase 3 data back in the second
> quarter and we submitted an NDA for post-surgical analgesia last month. *This is a*
> *505(b)(2) application with a standard 10-month review and thus we anticipate*
> *being able to commercialize the product soon after an approval in Q3 of 2017.*

(Emphases added.)

27.     On the same conference call, Defendant Carmona discussed XARACOLL's

anticipated PDUFA action date in 2017, stating in relevant part:

> Our cash position should enable us to manage our resources, to extend the cash
> runway, and to offer the anticipated XARACOLL PDUFA action date expected in
> the third quarter of 2017.
>
> Specifically, our near-term priorities include plans to optimize cost structure of
> company operations and to ensure [Indiscernible] from the preapproval inspection
> of our manufacturing facilities all in light of an anticipated target date for FDA
> approval of the XARACOLL NDA in the third quarter of 2017.

28.     On the same conference call, Defendant Russel spoke about the XARACOLL

NDA, stating in relevant part:

> So, the XARACOLL program, as Tony mentioned, we did submit our NDA based
> on our Phase 3 trial results and I'll give you some key specifics on what we asked
> for with respect to the potential label.
>
> We submitted for a broad indication for single dose placement into the surgical site
> to produce post-surgical analgesia. We did include results of both the MATRIX-1

and MATRIX-2 trials and the pool data for the demonstration of post-surgical analgesic effect of 48 hours.

We also included language related to XARACOLL's statistically significant reduction in total opioid consumption and increase in median time to first opioid use as well as the reduction in the incidences of opioid related adverse event.

***We're quite confident in our CMC package and we are well-prepared for the upcoming NDA preapproval inspection. We continue to plan for medical [publication] [ph] and presentation of the full analysis of XARACOLL's Phase 3 data, which are targeted for the second quarter of 2017.***

Also under preparation to be published next year are the results for our HECON study, demonstrating the Health Economics benefit of using XARACOLL. Our Pharmacokinetic data which was strongly supportive was recently presented at the American Society of Anesthesiologists Annual Meeting in October.

(Emphasis added).

29.    The statements referenced in ¶¶ 19-28 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's lead product XARACOLL for postsurgical pain treatment entailed undisclosed health and safety risks; (ii) consequently, the Company had overstated the drug's approval prospects and/or commercial viability; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Emerges**

30.    On December 29, 2016, Innocoll issued a news release entitled "Innocoll Receives Refusal to File Letter from U.S. FDA for XARACOLL® (bupivacaine HCl collagen-matrix implants) New Drug Application," announcing that it had received a Refusal to File letter from the FDA with respect to the Company's New Drug Application for its lead product candidate

XARACOLL, a postsurgical pain treatment.  Innocoll stated that the FDA's letter informed the Company that XARACOLL should have been characterized as a drug/device combination, requiring Innocoll to submit further information.  The news release stated in relevant part:

> ATHLONE, Ireland, Dec. 29, 2016 (GLOBE NEWSWIRE) -- Innocoll (NASDAQ:INNL), a global, commercial-stage, specialty pharmaceutical company, today announced that it has received a Refusal to File letter from the United States Food and Drug Administration (FDA) for XARACOLL, the company's product candidate for the treatment of postsurgical pain.
>
> ***Upon preliminary review, the FDA determined that the application, which was submitted in October 2016, was not sufficiently complete to permit a substantive review.  In the Refusal to File letter, the FDA indicated among other things, that XARACOLL should be characterized as a drug/device combination, which would require that the Company submit additional information.***  The company will request a Type A meeting with the FDA to respond to several issues believed to be addressable and seek clarification of what additional information, if any, will be required.  Additional details will be disclosed in the future after discussions with the FDA.
>
> "We expect to work with the FDA over the coming weeks in an effort to address the open issues and to define a path forward for a successful re-filing of our application at the earliest point in time," said Tony Zook, CEO of Innocoll.

(Emphasis added.)

31.     On this news, Innocoll's share price fell $1.08, or 61.02%, to close at $0.69 on December 30, 2016.

32.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Innocoll common shares traded on the NASDAQ during the Class Period (the "Class");

and were damaged thereby. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Innocoll common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Innocoll or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Innocoll;

- whether the Individual Defendants caused Innocoll to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Innocoll common shares during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Innocoll common shares are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased, acquired and/or sold Innocoll common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. This Count is asserted against the Individual Defendants and Innocoll and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44. During the Class Period, Innocoll and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45. Innocoll and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Innocoll common shares during the Class Period.

46.    Innocoll and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Innocoll were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Innocoll, their control over, and/or receipt and/or modification of Innocoll allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Innocoll, participated in the fraudulent scheme alleged herein.

47.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Innocoll personnel to members of the investing public, including Plaintiff and the Class.

48.    As a result of the foregoing, the market price of Innocoll common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Innocoll's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the

statements described above and/or the integrity of the market price of Innocoll common shares during the Class Period in purchasing Innocoll common shares at prices that were artificially inflated as a result of Innocoll's and the Individual Defendants' false and misleading statements.

49.     Had Plaintiff and the other members of the Class been aware that the market price of Innocoll common shares had been artificially and falsely inflated by Innocoll's and the Individual Defendants' misleading statements and by the material adverse information which Innocoll's and the Individual Defendants did not disclose, they would not have purchased Innocoll's common shares at the artificially inflated prices that they did, or at all.

50.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51.     By reason of the foregoing, Innocoll and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Innocoll common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### <u>Against The Individual Defendants</u>

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Individual Defendants participated in the operation and management of Innocoll, and conducted and participated, directly and indirectly, in the conduct of Innocoll's business affairs.  Because of their senior positions, they knew the adverse

non-public information about Innocoll's misstatement of income and expenses and false financial statements.

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Innocoll's financial condition and results of operations, and to correct promptly any public statements issued by Innocoll which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Innocoll disseminated in the marketplace during the Class Period concerning Innocoll's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Innocoll to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Innocoll within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Innocoll common shares.

56.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Innocoll.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 16, 2017                         Respectfully submitted,

**BRODSKY & SMITH, LLC**

Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
610-667-6200
610-667-9029 (Facsimile)
E-mail: esmith@brodskysmith.com
E-mail: mackerman@brodskysmith.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue - 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
Email: hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street - Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

EXHIBIT "A"

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _____JianMin  Huang_____, make this declaration pursuant to

Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities

Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Innocoll Holdings plc ("Innocoll" or the "Company")

and, authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Innocoll securities at the direction of plaintiffs' counsel or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Innocoll securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in Innocoll

securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _____1 / 3 / 2017_____
                  **(Date)**

                                        _____
                                        **(Signature)**

                                        Jian Min  Huang
                                        **(Type or Print Name)**

**INNOCOLL HOLDINGS PLC (INNL)**                                    Huang, Jianmin

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|------------------|
| 6/20/2016 | Purchase | 2,000 | $6.0100 |
| 6/22/2016 | Purchase | 1,000 | $5.5000 |